IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CAMPAIGN FOR SOUTHERN**                                              **PLAINTIFFS**
**EQUALITY; REBECCA BICKETT;**
**ANDREA SANDERS; JOCELYN**
**PRITCHETT; and CARLA WEBB**

**V.**                                                         **CAUSE NO. 3:14-CV-818-CWR-LRA**

**PHIL BRYANT, in his official capacity as**                   **DEFENDANTS**
**Governor of the State of Mississippi; JIM**
**HOOD, in his official capacity as Mississippi**
**Attorney General; and ZACK WALLACE,**
**in his official capacity as Hinds County**
**Circuit Clerk**

## ORDER

Before the Court is the plaintiffs' *Motion to Reopen Judgment, File Supplemental Pleading, and Modify the Permanent Injunction*. The matter is fully briefed and the parties thoroughly argued their positions at a motion hearing held on June 20, 2016.

The plaintiffs are concerned that newly-enacted House Bill 1523, the "Protecting Freedom of Conscience from Government Discrimination Act," will violate the Permanent Injunction they secured in this case in 2015. They seek to reopen the case to, among other things, file a supplemental complaint naming the State Registrar of Vital Records as a defendant, force the Registrar to post certain records online, and amend the Permanent Injunction to ensure that their Fourteenth Amendment rights are protected. The State opposes all relief.

For the reasons that follow, the Court concludes that the motion should be granted in limited part. Section 3(8)(a) of HB 1523 significantly changes the landscape of Mississippi's marriage licensing laws. The case will be reopened to address that change. The plaintiffs' request to file a supplemental complaint against the Registrar, however, will be denied.

I.   **Factual and Procedural History**

   A.   **Same-Sex Marriage Litigation**

In 2014, this Court issued a Preliminary Injunction enjoining the enforcement of § 263A of the Mississippi Constitution and Mississippi Code § 93-1-1(2). Those authorities prohibited same-sex couples from receiving a marriage license in Mississippi or securing State recognition of an out-of-state marriage. *Campaign for Southern Equality v. Bryant*, 64 F. Supp. 3d 906 (S.D. Miss. 2014) [hereinafter *CSE I*]. The injunction was stayed pending appeal to the United States Court of Appeals for the Fifth Circuit.

While that appeal was pending, the Supreme Court affirmed that "the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2604 (2015). Consequently, it pronounced that same-sex couples must be allowed to join in civil marriage "on the same terms and conditions as opposite-sex couples." *Id.* at 2605. That resolved the issue nationwide.

The Fifth Circuit quickly issued a published opinion declaring that "*Obergefell* . . . is the law of the land and, consequently, the law of this circuit and should not be taken lightly by actors within the jurisdiction of this court." *Campaign for Southern Equality v. Bryant*, 791 F.3d 625, 627 (5th Cir. 2015) [hereinafter *CSE II*]. It returned the case here on July 1, 2015, with an instruction to "act expeditiously on remand and . . . enter final judgment . . . by July 17, 2015, and earlier if reasonably possible." *Id.*

A few hours later, with this mandate in hand, this Court entered a Permanent Injunction and a Final Judgment in the plaintiffs' favor. The heart of the Permanent Injunction read as follows:

> In light of the United States Supreme Court's decision in *Obergefell v. Hodges*, No. 14-556, 2015 WL 2473451 (U.S. June 26, 2015), and the issuance of the mandate from the United States Court of Appeals for the Fifth Circuit, it is now appropriate to permanently enjoin the enforcement of Mississippi's same-sex marriage ban. Accordingly,
>
> **IT IS HEREBY ORDERED** that the State of Mississippi and all its agents, officers, employees, and subsidiaries, and the Circuit Clerk of Hinds County and all her agents, officers, and employees, are permanently enjoined from enforcing Section 263A of the Mississippi Constitution and Mississippi Code Section 93-1-1(2).

Docket No. 34. Much of this language was drawn from the Preliminary Injunction.

At first, there was confusion about whether and how every Circuit Clerk's office in Mississippi would follow *Obergefell*. "In a letter sent to Attorney General Jim Hood and Gov. Phil Bryant," one article reported, "the clerks asked for direction on how to proceed." Ross Adams, *Circuit Clerks Refusing to Issue Same-Sex Marriage Licenses Seek Answers*, WAPT News, July 1, 2015. "'We clerks make no decisions of law,'" they wrote. *Id.* "'We are tasked with the job of implementing the law. What is the law and how are we to properly follow it? We can be found liable . . . . We are formally stating we need your help.'" *Id.*

The Attorney General's Office responded to the clerks formally and informally. Among other things, it issued an Opinion advising all 82 Circuit Clerks to grant marriage licenses "to same-sex couples on the same terms and conditions accorded to couples of the opposite sex." *In re Steve Womack*, 2015 WL 4920123, at *1 (Miss. A.G. July 17, 2015). Mississippi's same-sex marriage ban had been laid to rest.

**B.     House Bill 1523**

In its next session, the Mississippi Legislature passed HB 1523. Governor Bryant signed the bill into law on April 5, 2016. It goes into effect on July 1, 2016.

HB 1523 first enumerates three "sincerely held religious beliefs or moral convictions" entitled to special legal protection. They are,

> (a) Marriage is or should be recognized as the union of one man and one woman;
> (b) Sexual relations are properly reserved to such a marriage; and
> (c) Male (man) or female (woman) refer to an individual's immutable biological sex as objectively determined by anatomy and genetics at time of birth.

2016 Miss. Laws, HB 1523 § 2. These will be referred to as the "§ 2 beliefs."

HB 1523 then says the State of Mississippi will not "discriminate" against any person for holding a § 2 belief. *Id.* §§ 3-4. "Discriminatory action" is defined broadly; it includes consequences in the realm of employment, state benefits, taxation, diplomas, licensing, and so on. *Id.* § 4. In short, a person who acts (or declines to act) based upon a § 2 belief cannot be subjected to State sanctions.

It is undisputed that consequences under federal law remain available. States "lack authority to nullify a federal right or cause of action they believe is inconsistent with their local policies." *Haywood v. Drown*, 556 U.S. 729, 736 (2009).

The part of HB 1523 relevant to this case is § 3(8)(a).[1] It must be reproduced here in its entirety.

> Any person employed or acting on behalf of the state government who has authority to authorize or license marriages, including, but not limited to, clerks, registers of deeds or their deputies, may seek recusal from authorizing or licensing lawful marriages based upon or in a manner consistent with a sincerely held religious belief or moral conviction described in Section 2 of this act. Any person making such recusal shall provide prior written notice to the State Registrar of Vital Records who shall keep a record of such recusal, and the state government shall not take any discriminatory action against that person wholly or partially on the basis of such recusal. The person who is recusing himself or herself shall take all necessary steps to ensure that the authorization and licensing of any legally valid marriage is not impeded or delayed as a result of any recusal.

---

[1] The plaintiffs' motion also mentions § 3(8)(b), which grants recusal rights to persons authorized to solemnize marriages in Mississippi. *See* Miss. Code Ann. §§ 93-1-15, 93-1-17. But the plaintiffs then omit § 3(8)(b) from their proposed Amended Permanent Injunction. This Order will focus on § 3(8)(a).

4

HB 1523 § 3(8)(a). The State's attorneys say that § 3(8)(a) "effectively amends Mississippi County Circuit Clerks' Office's marriage licensing obligations under state law by specifying conditions under which a clerk's employee may recuse himself or herself from authorizing or licensing marriages." Docket No. 41, at 6. According to those attorneys, HB 1523 requires marriage licenses to be issued to same-sex couples immediately. The law is not clear on who must bear that responsibility if every clerk in a particular county files a recusal form.[2]

From this summary the battle lines are apparent. The plaintiffs contend that permitting clerks to recuse themselves from serving same-sex couples returns Mississippi to unlawful discrimination against same-sex couples seeking to wed, in violation of the Permanent Injunction and *Obergefell*. HB 1523's proponents, in contrast, claim that the bill protects *against* discrimination by ensuring that clerks do not have to violate a sincerely held religious belief protected by § 2, while ensuring that same-sex couples get their marriage license.

### C. The Present Motion

Twenty days after Governor Bryant signed HB 1523, the plaintiffs wrote the Governor, Attorney General Hood, and State Registrar of Vital Records Judy Moulder to ask how persons recusing themselves under HB 1523 would comply with this Court's Permanent Injunction and *Obergefell*. The plaintiffs asked for copies of incoming written recusal notices and detailed compliance plans from each recusing individual.

The State denied that the Registrar was bound by the injunction.[3] It argued that she has nothing to do with enforcing *Obergefell* and would not provide the plaintiffs with any documentation unless they made a public records request. The State added that the Registrar's

---

[2] For simplicity, the Court will refer to persons with authority to issue marriage licenses as "clerks."
[3] The State initially treated the plaintiffs' letter as a request for public records. The plaintiffs took exception to that interpretation and framed their request as one brought pursuant to Federal Rule of Civil Procedure 69.

office would merely be a repository for recusal notices, with no duty to inquire into how recusing individuals would ensure that same-sex couples received a marriage license.

This motion followed. The plaintiffs seek an Amended Permanent Injunction requiring the Registrar to: (1) provide plaintiffs' counsel with recusal notices within a week of receipt; (2) post the recusal notices to a prominent place on the State's website; (3) require recusing individuals to submit a plan for complying with *Obergefell*; and (4) require recusing individuals to cease issuing marriage licenses to opposite-sex couples.

The State argues that the plaintiffs are seeking new, open-ended relief against an unknown number of parties not before the Court. It further contends that the plaintiffs have not been injured by HB 1523 and cannot complain about hypothetical constitutional violations.

## II.     Legal Standard

"A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) (collecting cases). "Courts of equity have long recognized and exercised a power to modify or set aside their injunctive decrees in the light of changed circumstances." *Cook v. Birmingham News*, 618 F.2d 1149, 1151 (5th Cir. 1980). The changed circumstances can be factual or legal, but must be "significant." *Horne v. Flores*, 557 U.S. 433, 447 (2009); *see ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 850 (5th Cir. 2006). A legal change can be recognized "in either statutory or decisional law." *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (citations omitted).

"A Rule 60(b)(5) motion is the appropriate vehicle for modifying a permanent injunction that has prospective effect, regardless of whether the modification expands restrictions or

eliminates restrictions in the injunction." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008) (citation omitted). The motion can be made by a party or by the Court. *Id.*

"The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." *Horne*, 557 U.S. at 447 (quotation marks and citations omitted).

"Although rule 60(b)(5) is to be construed liberally to prevent injustice, courts must also take account of a competing policy also embodied in the rule [–] the need to achieve finality in litigation." *Cook*, 618 F.2d at 1153 (citations omitted). "That is, although the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield . . . to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 385-86 (5th Cir. 2012) (quotation marks and citation omitted).

**III.   Discussion**

    **A.   Jurisdiction**

"The correct analysis of the scope of the court's continuing jurisdiction begins by identifying the constitutional infirmity addressed by this case in [earlier proceedings]." *Brumfield v. Louisiana State Bd. of Educ.*, 806 F.3d 289, 299 (5th Cir. 2015) (citation omitted). "[A]ny order issued under the district court's continuing jurisdiction over *this* case ha[s] to be related to correcting th[at] constitutional violation." *Id.* at 299.

The constitutional violation this case addressed in 2014 and 2015 was whether the Fourteenth Amendment permitted a State to treat same-sex couples differently than opposite-sex couples with respect to the issuance and recognition of marriage licenses.

Today's motion concerns the same issue. In HB 1523 § 3(8)(a), the State is permitting the differential treatment to be carried out by individual clerks. A statewide policy has been 'pushed down' to an individual-level policy. But the alleged constitutional infirmity is the same. The question remains whether the Fourteenth Amendment requires marriage licenses to be granted (and out-of-state marriage licenses to be recognized) to same-sex couples on identical terms as they are to opposite-sex couples.

The identity of issues is no coincidence. HB 1523's proponents candidly admitted that the bill was passed in response to *Obergefell*.[4] *See* H.B. 1523, Debate on the Floor of the Mississippi House of Representatives, at 6:24 (Feb. 19, 2016) (statement of Rep. Andy Gipson) ("What this bill does in essence is add an additional layer of protection that currently does not exist in the post-*Obergefell* decision [sic] that came from the Supreme Court in June of 2015, which legalized same-sex marriage throughout the United States, including in a majority of states that had adopted the traditional definition and only recognized marriage is between one man and one woman"); H.B. 1523, Debate on the Floor of the Mississippi Senate, at 2:34 (Mar. 31, 2016) (statement of Sen. Jenifer Branning) ("This legislation was brought forward as a result of the United States Supreme Court decision *Obergefell* last summer, that legalized same-sex marriage.");[5] *see also* Adam Ganucheau, *Mississippi's 'Religious Freedom' Law Drafted Out of State*, Mississippi Today, May 17, 2016 ("'After the Supreme Court decision in Obergefell (v. Hodges), it became apparent that there would be a head-on collision between religious

---

[4] This is perhaps the most compelling distinction between today's case and the State's preferred authority, the Ninth Circuit's per curiam decision in *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 403 (9th Cir. 1997).
[5] Videos of the floor debates have been preserved by the Mississippi College School of Law's Legislative History Project. The HB 1523 videos are available at http://law.mc.edu/legislature/bill_details.php?id=4621&session=2016.

8

convictions about gay marriage and the right to gay marriage created by the decision,' [House Speaker] Gunn said in a statement to Mississippi Today.").[6]

Because of the overlap in the specific constitutional infirmity, there is continuing jurisdiction to determine whether the Permanent Injunction should be modified to account for § 3(8)(a). *See United States v. Hall*, 472 F.2d 261, 265 (5th Cir. 1972).

**B.     Standing**

The State contends that the plaintiffs lack standing to seek an Amended Permanent Injunction. The argument fails to persuade.

First, the standing requirement "does not hold . . . where a court has entered a permanent injunction or some other equitable decree with prospective application." *Cooper v. Texas Alcoholic Beverage Comm'n*, 820 F.3d 730, 736 (5th Cir. 2016). "The permanent injunction remains in effect, even absent the original plaintiffs." *Id.*

Second, it is well-established that "[a] party that obtains a judgment in its favor acquires a judicially cognizable interest in ensuring compliance with that judgment." *Salazar v. Buono*, 559 U.S. 700, 712 (2010) (quotation marks and citation omitted). "Having obtained a final judgment granting relief on [their] claims, [the plaintiffs] had standing to seek its vindication." *Id.*

Third, even if those principles were in doubt, the Campaign for Southern Equality continues to have associational standing. *See Black Ass'n of New Orleans Fire Fighters (BANOFF) v. City of New Orleans, La.*, 853 F.2d 347, 352 (5th Cir. 1988).

---

[6] The State objects to newspaper articles being considered as evidence. The objection is well-taken, but the articles are important for historical context. "History provides enlightenment; it appraises courts of the subtleties and complexities of problems before them." *Jaffree v. Wallace*, 705 F.2d 1526, 1532 (11th Cir. 1983). If the State finds any particular newspaper reference objectionable, the discrete factual issue can be set for trial after an appropriate discovery period. *See Monumental Task Comm., Inc v. Foxx*, --- F. Supp. 3d ---, 2016 WL 311822, at *3 (E.D. La. Jan. 26, 2016) (crediting "the haste that is often necessary" in preliminary injunction proceedings for the general rule that "the findings of fact and conclusions of law made by a court deciding whether to grant a preliminary injunction are not binding at trial on the merits"). Newspaper articles aside, the videotaped legislative debates of HB 1523 provide a wealth of context and present little risk of incorrectly quoting legislators' statements.

Since the plaintiffs are seeking to protect their Permanent Injunction and Final Judgment, they have standing to bring this motion.

### C. The Permanent Injunction

Until June 2015, states like Mississippi treated same-sex couples differently than opposite-sex couples in the marriage licensing and recognition process. *Obergefell* and the Permanent Injunction were issued to halt that practice.

Having reviewed the relevant section of HB 1523, the parties' arguments, and the scope of the Supreme Court's ruling in *Obergefell*, the Court finds that § 3(8)(a) may in fact amend Mississippi's marriage licensing regime in such a way as to conflict with *Obergefell*. Section 3(8)(a) is a significant change sufficient to reopen this case and reconsider the language of the Permanent Injunction. The parties' additional arguments are discussed below.

#### 1. Other Circuit Clerks

The parties dispute whether the 81 Circuit Clerks outside of Hinds County, who again are not parties to this action, are bound by the Permanent Injunction.

Circuit Clerks are almost certainly aware of their obligations under *Obergefell*. They are also likely aware of the Permanent Injunction, given the Attorney General's July 2015 private communications, public press release, and subsequent Opinion Letter to one of their colleagues. And it is obvious that when they issue marriage licenses, clerks are acting as agents of the State, applying uniform Mississippi law. *See Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990).

The undersigned, though, is not persuaded that the 81 non-party Circuit Clerks are presently bound by the Permanent Injunction. In Mississippi, Circuit Clerks are county officials, notwithstanding the fact that their duties are established by state law. *United States v. Harris*, No. 5:07-CR-1, 2007 WL 2028948, at *3 & n.2 (S.D. Miss. July 11, 2007).

The Permanent Injunction affected the other 81 Circuit Clerks "only as precedent to be applied in subsequent litigation." Josh Blackman & Howard M. Wasserman, *The Process of Marriage Equality*, 43 Hastings Const. L.Q. 243, 255 (2016). The risks associated with that subsequent litigation are significant: "any official who forces that new lawsuit, loses, and is enjoined would be liable for the new plaintiffs' reasonable attorneys' fees." *Id.* at 259. But they are risks a clerk may wish to take.

Since a contempt proceeding is the next foreseeable step in this case, the better course of action is to ensure that the remaining 81 Circuit Clerks have received actual notice of a Permanent Injunction that binds them before they are held accountable for it. The parties shall confer on an appropriate procedure for providing that notice.

### 2. Post-Judgment Discovery

Under Federal Rules of Civil Procedure 65 and 69, plaintiffs are entitled to reasonable discovery to enforce an injunction against the parties bound by that injunction. *E.g.*, *Cooper v. Dallas Police Ass'n*, 584 F. App'x 208 (5th Cir. 2014). Specific discovery disputes, if any arise, may be brought to the attention of the Magistrate Judge.

That brings us to the disagreement about whether the Registrar is subject to the Permanent Injunction. Recall that the Permanent Injunction applied to "the State of Mississippi and all its agents, officers, employees, and subsidiaries . . . ." Docket No. 34.

The Registrar is definitely a State agent, officer, and employee. State law charges her with a duty "to carry into effect the provisions of law relating to registration of marriages." Miss. Code Ann. § 41-57-43; *see also id.* § 41-57-23(1) (permitting the Registrar to accept service of process for the Board of Health). The Registrar is also "charged by law with a[] special duty in

connection with" § 3(8)(a), and she has pledged to fulfill that duty. *Okpalobi v. Foster*, 244 F.3d 405, 413, 415 (5th Cir. 2001) (en banc) (quotation marks and citation omitted).

The State presses that although the Registrar is a State employee, and State employees are bound by the plain language of the Permanent Injunction, she is not bound because "the State" is technically not a party to this lawsuit.[7] *See* Docket No. 49. Although the Court will return to this argument below, some general thoughts about the Registrar are necessary here.

On one hand, the Registrar's willingness to comply with her new duties under HB 1523 furthers the State's alleged end-run around *Obergefell*. That may be enough to bind her under Rule 65(d)(2)(C). On the other hand, it is difficult to say that the Registrar is the true object of the plaintiffs' motion. She is merely a conduit. Her records will show exactly which clerks wish to recuse themselves under § 3(8)(a), and those persons may be interested in volunteering to be a class representative to represent similarly-situated clerks. And yet, the plaintiffs may not need those records to find a willing class representative. *See* Beth Alexander, *Circuit Clerks Answer if They Will Issue Licenses to Same-Sex Couples*, WJTV, June 21, 2016.

Setting aside those issues for a moment, though, there are good reasons to permit discovery from the Registrar strictly for purposes of enforcing the Permanent Injunction. In 2016, Mississippi responded to *Obergefell* by creating a new way to treat same-sex couples differently than opposite-sex couples. That the differential treatment is now pushed down to

---

[7] The Preliminary Injunction entered in this case in November 2014 explicitly bound "the State of Mississippi and all its agents, officers, employees, and subsidiaries." *CSE I*, 64 F. Supp. 3d at 954. If the State thought that verbiage an erroneous application of *Ex Parte Young* and the Eleventh Amendment, it should have raised it on appeal. *See Dagnall v. Gegenheimer*, 631 F.2d 1195, 1196 (5th Cir. 1980). It did not. In fact, when the Fifth Circuit asked the State to weigh in on the injunction's validity in the wake of *Obergefell*, the State explicitly conceded its accuracy. The Fifth Circuit therefore held: "Because, *as both sides now agree, the injunction appealed from is correct* in light of *Obergefell,* the preliminary injunction is AFFIRMED." *CSE II*, 791 F.3d at 627 (emphasis added). Given this record, the State's argument as to the Registrar may be foreclosed by the law of the case doctrine. Supplemental briefing on this topic may be necessary. *See Salazar*, 559 U.S. at 713-14; *Fred C. v. Texas Health & Human Servs. Comm'n*, 167 F.3d 537 (5th Cir. 1998) (permitting Texas to argue Eleventh Amendment immunity for the first time on remand, in a case where the Fifth Circuit had remanded for further proceedings, not entry of Final Judgment).

county employees should be irrelevant for discovery purposes. The State will have the documents that show exactly where and by whom the differential treatment *it authorized* in HB 1523 will now occur. The plaintiffs should be able to receive that post-judgment discovery from an appropriate State employee, like the Registrar, under Rule 69.

### 3. The State's Interests

Chief Judge Clark once wrote that the State of Mississippi "cannot dissociate itself from actions taken under its laws by labeling those it commands to act as local officials." *Echols*, 909 F.2d at 801. That is exactly what the State is doing here. Its highest officers have been enjoined from treating same-sex couples differently when it comes to marriage licenses, but the State is now (1) letting county employees do the previously-enjoined act, and (2) refusing discovery into the identity of those county employees when that information will be in the State's possession. The Fifth Circuit long ago chastised our State for such "a carefully calculated campaign of delay . . . and masterly inactivity." *Meredith v. Fair*, 305 F.2d 343, 344 (5th Cir. 1962).

We return to the Assistant Attorney General's argument that "the State" is not a party and has a due process right to defend itself, as if it was somehow new to this case.[8] The argument is disingenuous. The absence of "the State" from the case caption does not mean the State's laws and interests are not at stake. As the Supreme Court explained in *Hutto v. Finney*, "[a]lthough the Eleventh Amendment prevented respondents from suing the State by name, their injunctive suit against prison officials was, for all practical purposes, brought against the State. The actions of the Attorney General himself show that. His office has defended this action since it began." 437 U.S. 678, 699 (1978). The Fifth Circuit summarizes "the doctrine of *Ex parte Young*" as "a relatively simple rule of state immunity. Basically, prospective injunctive or declaratory relief

---

[8] Even if the State is not a named defendant, the Governor and the Attorney General *are*. The Governor signed a law that arguably enables county employees to do what he and his agents were explicitly forbidden from doing, and the Attorney General is defending his actions in this and related lawsuits.

13

*against a state* is permitted." *Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988) (emphasis added); *see Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997); *Kentucky v. Graham*, 473 U.S. 159, 170 (1985). And a leading treatise confirms that under *Ex parte Young*, a federal court may "enjoin the implementation of an official state policy" because "the state is the real party in interest," with the same result "as if the state had been sued directly." Erwin Chemerinsky, Constitutional Law § 2.10.4.1 (5th ed. 2015).

The Supreme Court's decision in *Green v. Mansour* may shed some light on our predicament. *Green* first reaffirmed that "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." 474 U.S. 64, 68 (1985) (citations omitted). Its review of precedent then led it to reaffirm that federal courts may, in certain situations, order one-time relief which is "ancillary to the prospective relief already ordered by the court," as long as it is not retroactive or monetary in nature. *Id.* at 70 (quoting *Quern v. Jordan*, 440 U.S. 332, 349 (1979)).

Today's motion centers on the importance of State-authorized, State-held records to vindicate federal rights protected by an existing Permanent Injunction. One therefore wonders whether this Court may require the Registrar to provide plaintiffs with any recusal forms she receives in the first month of HB 1523's enactment, because it is "ancillary to the prospective relief already ordered by the court." *Id.*[9] Such an order would impose no ongoing burden upon the Registrar, much less force the uploading of recusal forms to a State website. Rather, it moves all involved toward an efficient, single resolution: permitting a class of clerks to litigate and attempt to reconcile HB 1523 § 3(8)(a) with the Permanent Injunction. *E.g.*, *Mississippi State*

---

[9] Even if this Court could compel the Registrar to release every recusal she receives in July 2016, there is no guarantee she will have received any. Nothing in HB 1523 requires clerks to submit their recusal within the first 30 days (or even 60 or 90 days) of the law's effective date. Under the bill it seems a clerk may submit that recusal at the moment a same-sex couple arrives to obtain a license.

14

*Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 403 (5th Cir. 1991) ("included as defendants are the circuit clerks of two counties, representing a defendant class of Mississippi circuit clerks and county registrars"); *Strawser v. Strange*, 307 F.R.D. 604 (S.D. Ala. 2015).

### 4. Amending the Permanent Injunction

Finally, before any notices are disseminated, any discovery requests are propounded, or any records are compelled, the parties must confer to reevaluate the language of the Permanent Injunction.

The Permanent Injunction was entered the same evening the Fifth Circuit issued the mandate in *CSE II*. No one has argued that the Permanent Injunction is invalid, but the briefing now suggests that it lacks all necessary parties. Judicial economy may be served by an Amended Permanent Injunction which enjoins § 263A of the Mississippi Constitution and Mississippi Code § 93-1-1(2), incorporates appropriate language from Rule 65, and clarifies that the persons it binds must issue marriage licenses "on the same terms and conditions as opposite-sex couples." *Obergefell*, 135 S. Ct. at 2605; *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."); *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587 (1979) ("The Clause announces a fundamental principle: the State must govern impartially."). Clerks and their deputies are, after all, "public officials elected and paid by the county to serve the public and all of its citizens." *United States v. Duke*, 332 F.2d 759, 766 (5th Cir. 1964).

The point of adding *Obergefell*'s language is simple: the Supreme Court's ruling will be enforced. *Obergefell* "is the law of the land and, consequently, the law of this circuit." *CSE II*,

791 F.3d at 627. Mississippi's elected officials may disagree with *Obergefell*, of course, and may express that disagreement as they see fit – by advocating for a constitutional amendment to overturn the decision, for example. But the marriage license issue will not be adjudicated anew after every legislative session. And the judiciary will remain vigilant whenever a named party to an injunction is accused of circumventing that injunction, directly or indirectly. *See Hutto*, 437 U.S. at 690-91.

### IV.     Conclusion

The motion is granted in part and denied in part. The case is reopened for the parties to confer about how to provide clerks with actual notice of the Permanent Injunction. The parties shall also confer on appropriate language to include in an Amended Permanent Injunction. A status conference will be set in the coming weeks to discuss the results of those discussions and hear how the parties wish to proceed.[10] No other relief is granted at this time.

**SO ORDERED**, this the 27th day of June, 2016.

s/ Carlton W. Reeves<br>UNITED STATES DISTRICT JUDGE

---

[10] The status conference will proceed regardless of the outcome of other HB 1523-related cases.